IN THE

TENTH COURT OF
APPEALS




 
 
 
 
 
 
 


 



No. 10-02-00231-CR

 

Harvey Leroy Sossamon, III,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 54th District Court

McLennan County, Texas

Trial Court # 2001-1073-C

 



Opinion



 








            Appellant,
Harvey Leroy Sossamon, III, was charged by indictment with the felony
offense of murder of Donald Wayne Davis. 
Sossamon pled not guilty and was tried before a jury.  The jury found him guilty of murder and
assessed punishment at life in prison.   Appellant
appears pro se and raises eleven
issues on appeal:


 Whether the
 evidence is legally sufficient to support a finding that Sossamon
 intentionally or knowingly caused the death of Davis.


 


 Whether the
 evidence is factually sufficient to support a finding that Sossamon
 intentionally or knowingly caused the death of Davis.


 

 


 Whether the
 trial court erred in denying Sossamon a mistrial during the testimony of
 Victoria Aurora Steinhauer.


 


 Whether
 Sossamon’s conviction violates due process because of alleged perjured
 testimony by Sally Glenn.


 


 Whether Sossamon
 was denied his Sixth Amendment right to self-representation.


 


 Whether Sossamon
 was denied his self-representation right under the Texas Fair Defense Act.


 


 Whether Sossamon
 was denied his right to a Faretta hearing.


 


 Whether the trial
 court erred in allowing the testimony of Craig McClain for proof of prior
 extraneous offenses.


 


 Whether the
 trial court erred by including the lesser-included offense of manslaughter
 in the jury charge.


 


 Whether the
 trial court erred by including the provocation instruction in the jury
 charge.


 


 Whether Bellmead
 Police Department acted in bad faith during the preservation of evidence
 denying Sossamon’s due process rights. 


 

We will first address the legal sufficiency of
the evidence because that has the potential to provide Sossamon the greatest
relief.  We will then review the factual
sufficiency, the denial of a motion for mistrial, and two due-process
issues.  Next we will consider the issues
relating to self-representation, then an issue concerning extraneous
offenses.  Finally, we will consider
issues about the charge to the jury.  We will
overrule all these issues and affirm the judgment.

BACKGROUND

          On
June
 2, 2001, Sossamon was
at “The Bar” with several friends, including Sharmin Saladino.  Victoria Aurora Steinhauer, also known as
“Crazy Vicky,” began throwing items at Sossamon, which lead to a verbal
altercation between them.  Sossamon was
escorted to the parking lot by patrons, including Donald Wayne Davis, and the
owner of “The Bar.”  Shortly thereafter,
he returned inside “The Bar” carrying a gun, fired it, and killed Davis.  Sossamon
left the scene. He was apprehended and taken into custody three months later
after a high-speed chase.

ISSUE
ONE: LEGAL SUFFICIENCY OF THE EVIDENCE 

          The Due Process Clause of the
Fourteenth Amendment to the United States Constitution requires that every
state criminal conviction be supported by evidence that a rational factfinder
could find as sufficient to prove all the elements of the offense beyond a
reasonable doubt.  In re Winship,
397 U.S. 358, 362-64, 90
S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970); Coit v. State, 808 S.W.2d 473,
475 (Tex. Crim. App. 1991).  The Texas
Penal Code contains this same requirement. 
Tex. Pen. Code Ann. § 2.01
(Vernon 2003).

Evidence will
sustain a conviction if, viewing it in the light most favorable to the jury’s
verdict, any rational jury could have found the essential elements of the
offense beyond a reasonable doubt.  Lane v. State, 933 S.W.2d 504, 507 (Tex.
Crim. App. 1996) (following standard of Jackson v. Virginia, 443 U.S. 307, 318-19, 99
S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979)). 
We act only "as a final, due process safeguard ensuring . . . the
rationality of the factfinder."  Moreno v. State, 755 S.W.2d 866,
867 (Tex. Crim. App. 1988).  If, based on
all the evidence, a reasonably-minded jury must necessarily entertain a
reasonable doubt of the defendant's guilt, due process requires that we reverse
and order a judgment of acquittal.  We
must remember that reconciliation of conflicts in the evidence is solely a
function of the jury.  Bowden v. State,
628 S.W.2d 782, 784 (Tex. Crim. App. 1982).

Sossamon was
convicted of murder.  See Tex.
Pen. Code Ann. § 19.02(b)(1) (Vernon 2003).  The jury charge explained the elements of the
offense: “[A] person commits the offense of murder if he intentionally or
knowingly causes the death of an individual, or intends to cause serious bodily
injury and commits an act clearly dangerous to human life that causes the death
of an individual.”  The charge defined
“deadly weapon” as: “a firearm or anything manifestly designed, made, or
adapted for the purpose of inflicting death or serious bodily injury or
anything that in the manner of its use or intended use is capable of causing
death or serious bodily injury.”  The
charge instructed the jury as to intent and knowledge:

A person acts
knowingly or with knowledge, with respect to a result of his conduct when it is
his conscious objective or desire to cause the result.  A person acts knowingly, or with knowledge,
with respect to a result of his conduct when he is aware that his conduct is
reasonably certain to cause the result.

 

The jury was instructed
as to criminal responsibility: “A person is criminally responsible for causing
the result, if the only difference between what actually happened, and what he
desired, contemplated or risked, is that a different person was injured,
harmed, or otherwise affected, unless otherwise excused by the law.”  And finally, the charge included instructions
on the law of self defense.

Sossamon
challenges the legal sufficiency of the evidence only as to the proof of his
intent to cause Davis’s death.  Sossamon admits he shot Davis; however, he
contends that Steinhauer killed Davis when she got on
top of him after he was shot and squeezed him with her legs in an attempt to
save his life.  He also argues that he
shot his gun in self defense when he saw an attacker with a cue stick begin to
swing at him.

The State contends
that the evidence is legally sufficient to find that Sossamon intentionally or
knowingly killed Davis.  Based on testimony that Sossamon re-entered
“The Bar” with a gun stating he “wasn’t going to let them beat him up and kick
his car for nothing when he wasn’t bothering nobody” and then fired the gun,
the State argues that the jury was free to believe Sossamon intended to kill Davis.  The State also argues that Sossamon did not
bring forward evidence to prove his self-defense theory and the State only had
the burden to prove its case-in-chief beyond a reasonable doubt, which it
claims it did.  Thus, the State contends
that the jury’s guilty verdict was an implied finding against Sossamon’s
self-defense theory.

Specific intent
to kill may be inferred from the use of a deadly weapon unless it is reasonably
apparent that its manner of use could not result in death or serious bodily
injury.  Medina v. State, 7 S.W.3d 633, 637 (Tex. Crim.
App. 1999); Jones v. State, 944
S.W.2d 642, 647 (Tex. Crim. App. 1996). 
Intent can also be inferred from acts, words, and conduct of the
accused.  Patrick v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995).  

The State has the burden of persuasion in
disproving self defense.  Saxton v. State, 804 S.W.2d 910, 913
(Tex. Crim. App. 1991); Wilkerson v.
State, 920 S.W.2d 404, 406 (Tex. App.—Houston [1st Dist.] 1996, no
pet.).  This is not a burden of
production, i.e., one which requires
the State affirmatively to produce evidence refuting the self defense
claim.  Rather, it is a burden requiring
the State to prove its case beyond a reasonable doubt.  Saxton,
804 S.W.2d at 913-14; Wilkerson, 920
S.W.2d at 406.

At least five
eyewitnesses testified fairly consistently at trial regarding the major events that
occurred the evening of the shooting.  According
to their testimonies, Steinhauer started a verbal altercation with Sossamon.  Latham (the bar owner), Davis, and two other
men escorted Sossamon out of “The Bar” to attempt to keep peace.  Sossamon came back inside “The Bar” with a
gun and was angry.  No one attempted to
swing a cue stick at Sossamon.  Sossamon
shot Davis in the back as Davis was leaning forward
on the front pool table.  Sossamon
approached Davis who was on his knees and spoke to him.

Contrary to these
eyewitnesses, Sossamon testified: (1) there was a fight outside “The Bar”
provoked by one of the men who escorted him outside, (2) he had to fight with
three men when he re-entered “The Bar,” and (3) during the fight inside “The
Bar,” someone tried to attack him with a cue stick and he shot his gun at this
attacker.  When asked on the stand whether
it was his intent to kill anybody when he fired his gun, Sossamon responded: “I
was shooting the person that was going to hit me with a stick.  And if they died, that was okay.”  He said that he thought he shot
Steinhauer.  A law enforcement officer
testified that Sossamon told him that Davis got what he
deserved, that Sossamon intended to kill Steinhauer before turning himself into
the police, and that he did not kill Steinhauer the night of the shooting because
she was hiding behind a child.

Reviewing all
the evidence in the light most favorable to the verdict, we find that a
rational jury could have found beyond a reasonable doubt that Sossamon
intentionally or knowingly killed Davis and could have rejected his claim of
self-defense.  We overrule issue one.

ISSUE TWO: FACTUAL SUFFICIENCY OF THE EVIDENCE

For a factual
sufficiency review, we consider all of the evidence in a neutral light and ask
whether the jury was rationally justified in finding guilt beyond a
reasonable doubt.  Zuniga v. State,
No. 539-02, 2004 WL 840786, at *7 (Tex. Crim. App. April 21, 2004).   There
are two ways in which the evidence may be factually insufficient:

First, when considered by itself,
evidence supporting the verdict may be too weak to support the finding of guilt
beyond a reasonable doubt. Second, there may be both evidence supporting the
verdict and evidence contrary to the verdict. Weighing all the evidence under
this balancing scale, the contrary evidence may be strong enough that the
beyond-a-reasonable-doubt standard could not have been met, so the guilty
verdict should not stand. 

 

Id.  This standard acknowledges that evidence of
guilt can "preponderate" in favor of conviction
but still be insufficient to prove the elements of the crime beyond a
reasonable doubt.  Id.  Stated another way, evidence supporting guilt
can "outweigh" the contrary proof and still be factually insufficient
under a beyond-a-reasonable-doubt standard. 
Id.  

We must remain
cognizant of the jury’s role and unique position—one that this court is unable
to occupy.  Johnson v. State, 23
S.W.3d 1, 8 (Tex. Crim. App.
2000).  Therefore, we give “appropriate
deference” to the jury’s evaluation of contradictory evidence because resolution
often turns on an evaluation of credibility and demeanor.  See id.  The jury determines the credibility of the
witnesses and may “believe all, some, or none of the testimony.”  Chambers v. State, 805 S.W.2d 459, 461
(Tex. Crim. App. 1991).  It is the jury
that accepts or rejects reasonably equal competing theories of a case.  Goodman v. State, 66 S.W.3d 283, 287 (Tex. Crim. App.
2001).  The evidence is not factually insufficient
merely because the jury resolved conflicting views of evidence in favor of the
State.  See Cain v. State, 958
S.W.2d 404, 410 (Tex. Crim. App. 1997).

          Sossamon’s challenge to the factual
sufficiency of the evidence is also limited to the proof of his intent to cause
Davis’s death. 
He contends the evidence proving his intent to kill is greatly
outweighed by the evidence tending to disprove his intent to kill.  Therefore, Sossamon argues the State failed
to prove beyond a reasonable doubt that he intentionally or knowingly killed Davis.  The analysis relied upon by Sossamon to show a
failure of proof of his intent to kill includes: 1) lack of credibility of
witnesses based on intoxication, criminal history, vision, and line of sight to
shooting; 2) contradictory testimony of number of shots fired; 3) some
witnesses did not know anyone was shot and Davis was alive when Sossamon left
the scene; 4) Steinhauer was Sossamon’s intended victim; and 5) Sossamon shot
Davis in self defense.

The State argues
that the evidence is factually sufficient to find beyond a reasonable doubt that
Sossamon intentionally or knowingly killed Davis based on consistent
eyewitness testimony about Sossamon’s conduct. 
The State also argues that Sossamon did not bring forward evidence to
prove self defense.

First, the jury heard all of the witnesses and
had to decide which were more credible. 
We must defer to the jury’s determination of credibility of the
witnesses and the jury’s resolution of any contradictory testimony.  Goodman,
66 S.W.3d at 287.  Second, the proof
offered that Steinhauer was Sossamon’s intended victim actually tends to prove
intent to kill—not disprove it.  As
explained in the jury charge, criminal responsibility would still lie with
Sossamon even if his intended victim was Steinhauer.  Tex.
Pen. Code Ann. § 6.04(b) (Vernon 2003). 
Lastly, there is consistent eyewitness testimony contrary to Sossamon’s sole
testimony that he fired his gun in self defense at an alleged attacker with a
cue stick, which also tends to prove his intent to kill—not disprove it.

Viewing all of the evidence without the prism of
the “in the light most favorable to the prosecution” construct, the record does
not demonstrate that the proof of guilt is too weak to support the verdict, nor
is the contrary evidence strong enough that we can say the
beyond-a-reasonable-doubt standard could not have been met.  Zuniga,
2004 WL 840786, at *7.  We overrule issue
two.

ISSUE
THREE: DENIAL OF MISTRIAL

          An
appellate court uses an abuse of discretion standard to review a trial court’s
ruling on a motion for mistrial.  Ladd v. State, 3 S.W.3d 547, 567 (Tex.
Crim. App. 1999), cert. denied, 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000).

          Sossamon
called Steinhauer to testify; however, the State did not want her to testify
because of her prior outbursts in another criminal proceeding.  Prior to her testimony, the court stated that
it would not grant a mistrial based on any outburst that may occur during her
testimony.  Sossamon did not object.  During Steinhauer’s testimony, Sossamon made
a motion for mistrial based on an objection to hearsay regarding whether
Steinhauer was scared and whether she asked the State not to subpoena her.  This motion was denied.

          Sossamon
now argues that he was unfairly asked to waive his right to a mistrial in advance
to obtain Steinhauer’s testimony.  The
State argues that this issue was not preserved for review, and we agree.  Tex.
R. App. P. 33.1.  The State also
argues and we agree that the court acted within its discretion in denying
Sossamon’s request for a mistrial based on a question that called for
hearsay.  See Ladd, 3 S.W.3d at 567.  We
overrule issue three.

ISSUES
FOUR AND ELEVEN: DUE PROCESS

Perjury

          A
due process violation is established if the prosecutor knowingly uses perjured
testimony and the reviewing court cannot determine beyond a reasonable doubt
that the testimony was harmless.  United States v. Bagley, 473 U.S. 667,
678-80 & n.9, 105 S.Ct. 3375, 3381-82 & n.9, 87 L.Ed.2d 481
(1985).  Even when the prosecutor does
not instigate the perjury, he is obligated to correct any perjured testimony
given by one of his witnesses.  Id. at 678; Ex
Parte Castellano, 863 S.W.2d 476, 480 (Tex. Crim. App. 1993) (citing Alcorta v. Texas, 355 U.S. 28, 31, 78 S.Ct. 103, 105, 2 L.Ed.2d 9 (1979)).  The Appellant bears the burden to show the
testimony was perjured.  Luck v. State, 588 S.W.2d 371, 373 (Tex.
Crim. App. 1979).

          Sossamon
argues that the State intentionally used perjured testimony when Sally Glenn
testified that the victim was shot while on his knees, which contradicts the expert
testimony of Dr. Jill Urban that the path of the bullet was upwards.  Sossamon contends the image of Sossamon
shooting Davis while on his knees inflamed the minds of the
jurors.

          The
State argues Sossamon did not offer any evidence to prove that Glenn’s testimony
was perjured.  We agree.  The State points out and we agree that
disagreements in testimony do not necessarily constitute the use of perjured
testimony.  See Onate v. State, 62 S.W.3d 208, 212 (Tex. App.—El Paso 2001, no pet.).  We also agree with the State that Glenn’s credibility
and the weight to be given to her testimony was an issue for the jury to
resolve.  See Vasquez v. State, 654 S.W.2d 775, 778 (Tex. App.—Houston [14th
Dist.] 1983, no pet.).  Sossamon has not
proven that Glenn’s testimony was perjured. 
We overrule issue four.

Preservation of Evidence

          To
succeed on a due process claim involving destruction of evidence, Appellant has
the burden to show that the State acted in bad faith and that the evidence
allegedly not preserved is material and favorable.  Arizona v.
Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988).  Three factors are relevant: 1) the likelihood
that the lost evidence was exculpatory, 2) the likelihood that the defendant
was prejudiced at trial by the absence of the evidence, and 3) the level of
government culpability.  Davis v. State, 831 S.W.2d 426, 442
(Tex. App.—Austin 1992, pet. ref’d); Saldana
v. State, 783 S.W.2d 22, 23 (Tex. App.—Austin 1990, no pet.).

Sossamon contends that the evidence-preservation-and-recovery
techniques and policies of the Bellmead Police Department at the crime scene
were so poor, or non-existent, as to constitute “bad faith” on the part of the
Department, which violates his due process rights.  He argues that the witnesses should not have been
allowed back inside “The Bar,” fingerprints should have been taken from the cue
stick, and attempts should have been made to recover the bullets and damaged
materials at the crime scene.

The State argues that Sossamon fails to
demonstrate how this evidence could have been exculpatory.  We agree with the State.  The evidence Sossamon complains of does not
appear to be exculpatory and the absence of the evidence did not prejudice
Sossamon at trial.  Even if Sossamon did
show that some of this evidence would be material and favorable to his case, he
has failed to show any bad faith on the part of the State.  We overrule issue eleven.

ISSUES
FIVE, SIX, AND SEVEN: SELF-REPRESENTATION

The Sixth Amendment to the United
States Constitution and Article I, Section 10 of the Texas Constitution provide
a criminal defendant the right to assistance of counsel.  U.S. Const. amend. VI; Tex.
Const. art. I, § 10.  A criminal
defendant may waive his right to counsel and represent himself at trial;
however, the accused must knowingly and intelligently forego his right to
counsel.  Faretta v. California, 422 U.S. 806, 821, 835, 95 S.Ct. 2525, 2534, 2541, 45
L.Ed.2d 562 (1975).  A waiver of the
right to counsel will not be “lightly inferred,” and courts will indulge every
reasonable presumption against the validity of such a waiver.  George
v. State, 9 S.W.3d 234, 236 (Tex. App.—Texarkana 1999, no pet.) (citing Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461
(1938), and Jordan v. State, 571
S.W.2d 883, 884 (Tex. Crim. App. 1978)). 
However, the denial of the right to self-representation at trial is a
“structural error” and is not subject to a harmless-error test.  McKaskle v. Wiggins, 465 U.S. 168, 177 n.8, 104 S.Ct. 944,
950 n.8, 79 L.Ed.2d 122 (1984); Mendez v.
State, 138 S.W.3d 334, 340 (Tex. Crim. App. 2004).

The right to self-representation
does not attach until it has been clearly and unequivocally asserted.  Funderburg
v. State, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986) (citing Faretta, 422 U.S. at 835, 95 S.Ct. at 2541).  Before the trial court accepts the request,
the defendant must be “made aware of the dangers and disadvantages of
self-representation, so that the record will establish that ‘he knows what he
is doing and his choice is made with eyes open.’”  Faretta,
422 U.S. at 835, 95 S.Ct. at 2541.  And the trial court may appoint “standby
counsel” to assist the pro se
defendant in his defense.  Id., 422 U.S. at 834 n.46, 95 S.Ct. at 2541 n.46.  Even if a defendant requests to represent
himself, the right to self-representation may be waived through a defendant’s
subsequent conduct indicating he is vacillating on the issue or has abandoned
his request altogether.  Brown v. Wainwright, 665 F.2d 607, 610
(5th Cir. 1982); Garrett v. State,
998 S.W.2d 307, 317 (Tex. App.—Texarkana 1999, pet. ref’d).  Thus, participation of standby counsel must
be objected to by a defendant to avoid eroding of the Faretta right.  See McKaskle, 465 U.S. at 178, 104 S.Ct. at 951 (“[A]cquiescence in
certain types of participation by counsel substantially undermines later
protestations that counsel interfered unacceptably.”).

In a prior order on December
 31, 2002, we denied
Sossamon’s request to abate his appeal, finding “Sossamon asked that he be
permitted to represent himself at trial with the assistance of standby
counsel.”  Sossamon v. State, 110 S.W.3d 57, 58 (Tex. App.—Waco 2002, order)
(per curiam).  Judge Derwood Johnson,
sitting in the 54th District Court, granted his request and appointed Stanley
Schweiger as standby counsel. 
Nevertheless, the clerk’s record reflects that following this
appointment, Schweiger filed all of the pre-trial motions filed on Sossamon’s
behalf without any objections by Sossamon.[1]  In
addition, the reporter’s record reflects active representation by Schweiger
without any objection by Sossamon during the jury trial before Judge Clyde
Whiteside in the 54th District Court. 
When the court asked for introduction of the lawyers, the followed
dialogue occurred:

THE COURT: The lawyer for the defense will
introduce yourself.

[Mr. Schwieger]: Good
morning, ladies and gentlemen of the jury. 
My name is Stan Schweiger.

[Mr. Fehler]: And I am Damon Fehler

THE COURT: Thank you, gentlemen.

Schweiger then questioned the jury panel without
objection by Sossamon.  Following the
reading of the indictment, the following exchange occurred:

THE COURT: This is the
indictment read to you now.  How does the
defendant plead?

[Appellant]: Not guilty.

THE COURT: Not guilty plea is entered.  The case will proceed.

Schweiger then did the following without
objection from Sossamon: 1) made defendant’s opening statement; 2)
cross-examined all of the State’s witnesses; 3) called and examined all of the
defendant’s witnesses; 4) called and examined Sossamon as a witness; 5) made
objections to testimony and the jury charge; 6) announced that the defense
rested; and 7) gave the defendant’s closing argument to the jury.

It is clear from the record that
after Schweiger was appointed standby counsel, Sossamon deviated from his position
that he wanted to represent himself.  He
did not display an unwavering desire to conduct his own defense and did not
insist on conducting his own defense at trial in front of Judge Whiteside, who
was not the judge who had granted his request for self-representation.  Sossamon eroded his Faretta right by never objecting to standby counsel’s
participation.  See McKaskle, 465 U.S. at 178, 104 S.Ct. at 951.  Therefore, through Sossamon’s conduct during
pre-trial and trial, he waived his right to self-representation by
abandonment.  See Brown, 665 F.2d at 610; Garrett,
998 S.W.2d at 317.

We find that under these
circumstances, Sossamon was not denied his rights to self-representation.  We overrule issues five, six, and seven.

ISSUE
EIGHT: EVIDENCE OF PRIOR EXTRANEOUS OFFENSES

          A
trial court's ruling as to the admissibility of extraneous offense evidence is
reviewed under an abuse of discretion standard. 
Mitchell v. State, 931 S.W.2d
950, 953 (Tex. Crim. App. 1996).  The
Code of Criminal Procedure requires that on a timely request by the defendant, the
State must give the defendant notice of extraneous crimes or bad acts that the
State intends to use at the punishment hearing. 
Tex. Code Crim. Proc. Ann.
art. 37.07, § 3(g) (Vernon Supp. 2004) (“in the same manner required by Rule
404(b)").  A reasonable notice
requirement exists to avoid unfair surprise and trial by ambush.  Henderson
v. State, 29 S.W.3d 616, 625 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d) (citing Nance v. State, 946 S.W.2d 490,
491-93 (Tex. App.—Fort Worth 1997, pet. ref'd)).  If the crime or bad act has not resulted in a
final conviction or a probated or suspended sentence, notice of the intent to
introduce evidence of such crime or bad act is reasonable only if the notice
includes the date on which and the county in which the alleged crime or bad act
occurred and the name of the alleged victim of the crime or bad act.  Tex.
Code Crim. Proc. Ann. art. 37.07, § 3(g).  Because these rules provide only minimal
details regarding the manner in which notice is given, the reasonableness of
the State's notice turns on the facts and circumstances of each individual
case.  Scott v. State, 57 S.W.3d 476, 480 (Tex. App.—Waco 2001, pet.
ref'd).   We have previously stated that
notice provided ten days before trial will be presumptively reasonable.  Chimney
v. State, 6 S.W.3d 681, 694 (Tex. App.—Waco 1999, no pet.).

          Sossamon
contends that he was not provided notice of the State’s intent to introduce
evidence from his prior extraneous offense of Aggravated Robbery of Ventura’s
Jewelry in 1979.  The State introduced
evidence by a Ventura’s Jewelry employee, Craig McClain, regarding
the events of the robbery.  The State
argues it provided adequate notice of intent to call this witness.  The State’s notice said:

On October 2, 1979, Harvey Leroy Sossman [sic], the defendant, was
convicted of Aggravated Robbery in the 183rd District Court of Harris County, Texas, Cause # 293153.  The victim
was Ventura’s Jewelry, 2607 Richmond, Houston, Texas, 88098.

 

          The
State was required to provide reasonable notice.  The State provided notice more than ten days
prior to trial and included all of the elements required.  Because Sossamon was actually convicted of
this crime and Sossamon had reasonable notice that evidence may be submitted about
this conviction, the trial court did not abuse its discretion in allowing McClain’s
testimony.  Issue eight is overruled.

ISSUES
NINE AND TEN: JURY CHARGE

Lesser-included offense of manslaughter

Sossamon argues that he was entitled to have the
jury deliberate and consider his self-defense claim without the inclusion of a
reckless conduct instruction (here, manslaughter) where there was no evidence
of recklessness.  However, the State
argues and we agree that a conviction for the greater inclusive offense
nullifies any possible harm that might have derived from an instruction on a
lesser-included offense.  See Saunders v. State, 913 S.W.2d 564,
569-70 (Tex. Crim. App. 1995) (citing De
Russe v. State, 579 S.W.2d 224, 233 (Tex. Crim. App. 1979) (“conviction of the
greater offense made the question essentially academic”), and O’Pry v. State, 642 S.W.2d 748, 765
& n.11 (Tex. Crim. App. 1981) (“because the jury had convicted of the
greater offense, the error, if any, was not reversible”)).  Therefore there is no error because
Sossamon’s murder conviction, the greater offense, nullified any error in
including the lesser-included offense of manslaughter in the jury charge.  We overrule issue nine.

Provocation instruction

          Provocation
limits or totally bars a defendant’s right to a self-defense theory.  Smith
v. State, 965 S.W.2d 509, 512 (Tex. Crim. App. 1998).  If the defendant provokes another to make an
attack on him, and then has a pretext for killing the other in self defense,
the defendant forfeits his right to self defense.  Id.; Tex.
Pen. Code Ann. § 9.31(b)(4) (Vernon 2003).

A charge on provocation is proper when there is
sufficient evidence (1) that the defendant did some act or used some words that
provoked the attack on him, (2) that such act or words were reasonably
calculated to provoke the attack, and (3) that the act was done or the words
were used for the purpose and with the intent that the defendant would have a
pretext for inflicting harm upon the other. 
Smith, 965 S.W.2d at 513.  An appellate court reviews the evidence in the
light most favorable to giving the instruction and asks whether there was
sufficient evidence from which a rational jury could have found provocation
beyond a reasonable doubt.  Id. at 514.

          Sossamon
argues that Steinhauer is the one who started the initial verbal altercation and
that Davis said “get the f___ out of here” upon escorting
Sossamon out of “The Bar.”  Also,
Sossamon alleges that one of the men who escorted him outside “The Bar”
instigated the fight outside by hitting him in the back of the head and
spitting on his neck.  The State argues
that Sossamon’s comments to “try to hit me now” and “they ain’t going to be
bothering me, pushing me for no reason at all. 
I wasn’t bothering nobody” when he returned inside “The Bar” with a gun
were sufficient evidence that Sossamon was looking for a fight.

There is eyewitness testimony to support the
State’s argument on this issue.  We find
sufficient evidence for a rational jury to have found provocation beyond a
reasonable doubt; therefore, the provocation instruction was proper.          We overrule issue ten.




CONCLUSION

Having overruled Sossamon’s issues, we affirm
the judgment.

 

 

BILL VANCE

Justice

 

Before Justice Vance,

Justice Reyna, and

Judge Carroll[2]
(Sitting by Assignment)

Affirmed

Opinion delivered and filed November
 17, 2004

Do not publish

[CRPM]











    [1] A waiver of arraignment was also signed by
Sossamon and Schweiger, which stated “Defendant herein is represented by counsel, . . . .”





   [2]
 Hon. Joe Carroll of the
27th District Court of Bell County, sitting by assignment of the Chief Justice
of the Texas Supreme Court pursuant to section 74.003(h) of the Government
Code.  See Tex. Gov=t Code Ann. '
74.003(h) (Vernon
Supp. 2004).